STATE OF MAINE
*vs.*
ROBERT H. MOTTRAM

Cumberland.   Opinion, November 3, 1959.

*Arthur Chapman, Jr.,*
*Clement B. Richardson,* for plaintiff.

*Walter Casey,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN,
DUBORD, SIDDALL, JJ.

TAPLEY, J.   On exceptions and appeal.  The respondent was convicted of the crime of larceny at the January Term, 1958 of the Superior Court, within and for the County of Cumberland.  The indictment upon which he was tried contained two counts, the first count charging the crime of larceny and the second count alleging a former conviction of a felony.  The jury in returning its verdict reported a special finding that the State had proven the allegation of prior conviction.  The case is before this court on exceptions, seasonably taken and properly perfected, attacking the admission of testimony.  A motion for a new trial was filed and, after hearing before the justice below, the motion was denied.  Respondent appealed from the denial.

EXCEPTIONS.

Both exceptions relate to the testimony of a State Police Officer and are concerned with the recital by the officer of a conversation he had with the respondent.  The first exception has to do with the following testimony:

"Q.   In cash?

A.   Yes, sir, and that they then went to the Camden National Bank and had a notarized bill of sale made out by Mr. Wadsworth.  I think I then questioned Mr. Mottram as to how many cars he had owned in the past two years.  He related that he had - - -

> MR. HANSCOMB: I object.  What does it have to do with this?  It is immaterial. What difference does it make?  We are concerned with a charge against this man that he stole a certain car.

> MR. RICHARDSON:  I think the method of transaction and mode of transaction would have some bearing on the present transaction.

THE COURT: I will speak with counsel at the bench, please.

(Bench Conference)

MR. RICHARDSON: Will you read the question, Mrs. Payne?

(The question was read by the Reporter, also the portion of the answer as given)

Q. Why not proceed?

THE COURT: In order to make a ruling we will have to make sure there is a question.

Q. Officer, you have stated you asked Mr. Mottram how many cars he owned in the last year or two?

A. Yes, sir.

Q. Did he tell you?

A. Yes, sir.

MR. HANSCOMB: I object.

THE COURT: Admitted.

MR. HANSCOMB: Exception, please.

THE COURT: Yes.

A. He told me he had owned nine cars in the last two years.

Q. Did you have other conversation about the cars?

A. Yes, sir.

Q. What was the conversation?

A. I asked Mr. Mottram if he had obtained a notarized bill of sale for each of the nine cars he had purchased in the past two years.

Q. What did he say?

A. 'No, sir'.

Q. Did he say if he had for any of the cars he had purchased?

A. No, sir. I further asked him if he had gone to the meticulous manner of going to the bank and having the bill of sale notarized when he purchased a car, and he said 'No'."

The second exception is based on objection to the admission of the testimony contained in the following quotation from the record:

"Q. During the course of the interview did you ask Mr. Mottram if he took the '54 Cadillac to New York State?

A. Yes, sir.

Q. What did he say?

MR. HANSCOMB: I object. It is not material.

THE COURT: Will you read the question, please?

(The question was read by the Reporter)

MR. HANSCOMB: How is it material?

MR. RICHARDSON: It is the vehicle that is charged in this larceny.

MR. HANSCOMB: Mr. Mottram had a bill of sale and was driving a registered vehicle in his own name.

MR. RICHARDSON: This is not the time for argument.

THE COURT: I think I should inquire the purpose of the question.

(Bench Conference)

Q. Sergeant Holdsworth, did you ask this respondent if he drove this 1954 two-tone Cadillac to New York State?

A. Yes, sir; on two different occasions.

Q. Did he tell you when he drove it to New York, if he did?

MR. HANSCOMB: I object.

MR. RICHARDSON: I will rephrase it.

Q. What did he say when you asked if he drove it to New York?

THE COURT: Admitted.

MR. HANSCOMB: Exception, please.

A. I asked him on two different occasions.

Q. Why don't you relate the conversation?

MR. HANSCOMB: I assume my objections and exceptions will go to all this line without my getting up each time.

THE COURT: The record shows your statement.

A. I asked him if he had taken this car to New York State and the first time I asked him he said 'No'. The second time I asked him he said 'Yes'. The reason he said 'No' the first time was that he was not going to get hooked on a federal rap."

The State offered testimony of the State Police Officer for the purpose of presenting for jury consideration a conversation between the officer and the respondent. The conversation pertained to the car that was alleged to have been stolen with the respondent explaining how he came in possession of the automobile. The answers given by the respondent were elicited by questions on the part of the officer. The State attempted to show through statements made by the respondent that of the nine cars he had owned during the last two years the transaction involving the alleged stolen car was the only one in which a bill of sale was notarized.

Objection was made to the admission of some further conversation the respondent had with the officer having reference to the taking of the alleged stolen car to New York State. The respondent's statement to the officer was that he first denied taking the car to New York State but later ad-

mitted doing so. The reason he gave for his denial was that he feared an admission would subject him to a "Federal rap."

The testimony brought to our attention by these exceptions is part of statements made by respondent as a result of inquiries by an investigating officer. These isolated portions, when taken in light of and in conjunction with the rest of the statements made by the respondent, became proper testimony for jury consideration as part of the State's case. "The general rule is, that all a party has said, which is relevant to the question involved, is admissible in evidence against him." *State* v. *Gilman,* 51 Me. 206, at page 223. See 22 C. J. S., Criminal Law, Sec. 730. The relevancy of respondent's statements is apparent.

The presiding justice was not in error in admitting the testimony.

## APPEAL

The respondent filed and argued a motion for a new trial which was denied. The motion brings into contention (1) that the evidence was insufficient upon which to base a verdict of guilty; (2) that the presiding justice without right allowed an amendment to the count in the indictment alleging prior conviction; (3) that the State failed to prove the allegation of prior conviction.

It would serve no useful purpose to recite in detail that portion of the record which warranted the factual finding of the jury that respondent was guilty of the larceny of an automobile. A careful review of the record shows sufficient evidence upon which the jury was justified in returning a verdict of guilty. *State* v. *Hudon,* 142 Me. 337. *State* v. *Smith,* 140 Me. 255.

The indictment was returned at the January Term, 1958. On the twenty-sixth day of the term the case was opened

before a drawn jury. Previous to the commencement of the trial, but on the same day, the State presented a motion to amend that portion of the indictment alleging previous conviction. The amendment sought change of date of the prior conviction from the 15th day of June, 1952 to the 17th day of June, 1952. This amendment was allowed by the presiding justice without objection on the part of the respondent. Not only was the amendment allowed without objection but the docket entry reflects the fact that the respondent consented to the amendment.

The allowance of the amendment raises the question as to whether or not the court had the authority to amend the indictment even though the amendment was consented to by the respondent. The Legislature has seen fit to confer upon the court the authority to amend an indictment as to form only. The pertinent part of Sec. 14, Chap. 145, R. S., 1954 reads:

> "- - - - any criminal process may be amended, in matters of form, at any time before final judgment. Any complaint, indictment or other criminal process for any offense, except for a felony, may be amended in matters of substance, provided the nature of the charge is not thereby changed."

In order to conform to this statutory authority, the amendment must affect a matter of form and not of substance. The question before us is whether or not the changing of the date in the count in the indictment from the 15th day of June to the 17th day of June is a substantive change or one of form.

> "Amendments to an indictment which in effect change the nature or grade of the offense charged go to the substance of the indictment and cannot be made or ordered by the court. Such amendments would infringe the constitutional right of the accused to a presentment or indictment only by a grand jury; and while the time of the com-

mission of an offense is ordinarily a matter of form, there are instances in which time becomes a matter of substance, in which event it cannot be made the subject of amendment by the court." 27 Am. Jur., Indictments and Information, Sec. 117, page 677.

"It is the general rule, too, that the courts have the power to authorize amendments correcting erroneous allegations in indictments as to the time of the offense, when time is not of the essence of the crime." 27 Am. Jur., Indictments and Informations, Sec. 118, page 679.

In *State* v. *Bartley,* 92 Me. 422, an allegation of former conviction was attacked by demurrer. The count in general terms alleged that James Bartley had been convicted in the County of Piscataquis as a common seller under the laws for the suppression of drinking houses and tippling shops. The court said on page 426:

"It must be remembered that the allegation is a material one in charging the commission of the greater offense; — without it the accused could only be convicted and punished for the lesser offense. It is an elementary principle of pleading, both in criminal and civil proceedings, that every traversable material allegation must be laid with some certain time. Here neither the time nor the court nor the term of court of the alleged former conviction is stated. The allegation is material, it is traversable and raises an issue of fact to be determined by a jury if denied by the respondent. In such a case he should be apprised of the time when, as claimed, he had been convicted of another violation of the same statute. The objection is not merely technical nor fanciful. One important issue raised by this allegation is as to the identity of the accused with the person who had been previously convicted, in any case a prosecuting attorney might make a mistake upon this matter of identity; and the accused should be enabled, by an allegation of time, to prepare his defense by showing that he

was not the person named in the record of the previous conviction."

"- - - - the averment of time is altogether formal, unless the time itself be a legal constituent of the offense - - - - and time is not of the essence of the offense except in cases where an act may be innocent if done at one time, but criminal if done at another." *State v. Calabrese,* 124 A. 54 (N. J.), at page 55.

Allegation of time is ordinarily a matter of form but under some circumstances it becomes substance. For example, when a date is changed, substituting two dates for the one and thereby charging the respondent with two crimes instead of one, or when the changing of a date creates an offense when the date before being changed does not, then the allegation of time takes on the quality of substance. See 68 A. L. R. Anno., page 936.

" 'Substance' is that which is essential to the making of a valid charge of crime. If the amendment is such that it is not essential to the charging of a crime, then it is not one of substance but one of form." *Souerdike v. State,* 102 N. E. (2nd) 367, at page 368 (Ind.).

Under the circumstances of this case, the rule could be stated in this manner: If the averment of date is not essential to the identification of the record of prior conviction, then it is not one of substance but one of form.

The count of prior conviction must, by allegation, notify the respondent that he is charged with a previous conviction of a felony and sentenced thereon to a State Prison. In order to properly prepare his defense, he is entitled to that degree of strictness in description of the record that will inform him of the particular record to be used as evidence.

The indictment in the instant case, as originally drafted, informs the respondent that he,

"was convicted of a felony in the State of Maine, to wit: on the 15th day of June in the year of our Lord one thousand nine hundred and fifty-two, at the Superior Court in the County of Androscoggin and State of Maine, he was convicted of the crime of larceny of an Automobile of the value of over One Hundred Dollars and was sentenced by the Honorable Arthur Sewall, Justice of the Superior Court, to serve a term of not less than one year nor more than two years in the Maine State Prison, and in pursuance of said sentence was committed to the said Maine State Prison;"

Disregarding for the moment the day of the month as alleged, the respondent from the language of the count must certainly be aware that he was charged (1) with the prior conviction of a felony in the State of Maine; (2) that the conviction occurred in the month of June, 1952 in the Superior Court in the County of Androscoggin and State of Maine; (3) that he was convicted of the crime of larceny of an automobile and was sentenced by a Judge of the Superior Court, to wit, Honorable Arthur Sewall for a term of not less than one year nor more than two years in the Maine State Prison; (4) and that he was committed to State Prison on this sentence. In light of all other identifying information contained in the count, the averment of an exact day of the month is not essential. In view of the detailed information given to the respondent, can it be said that he is misled in the preparation of his defense or that he is not sufficiently informed of what former conviction is referred to? Under these circumstances can it reasonably be determined that the changing of the 15th day to the 17th day of June be anything more than a change in form? We think not. The provisions of Sec. 14, Chap. 145, R. S., 1954 apply and under its authority the presiding justice was not in error in allowing the amendment.

It is to be noted that the question of the allowance of the amendment should have been presented to this court on exceptions and not by appeal. Appeal is not the proper method of review. We feel that although the question is not technically before us, justice requires that we depart from the basic rule and give consideration to the respondent's complaint in order to be sure that the allowance of the amendment did no violence to his right and that he suffered no prejudice thereby. *State* v. *Smith,* 140 Me. 255.

We now consider the adequacy of proof of the allegation of prior conviction. The record in substance discloses that the Clerk of Courts for the County of Androscoggin, by reference to the Superior Court docket for that county, testified that one Robert H. Mottram was convicted of the crime of grand larceny on June 17, 1952 and that on the same day he was sentenced to serve 1 to 2 years in the State Prison. Testimony of the Chief Deputy of Androscoggin County evidences that he was acquainted with Robert H. Mottram and that he was present in the Androscoggin Superior Court on June 17, 1952 when Mr. Mottram was convicted and sentenced for the crime of grand larceny.

The statute providing for additional or enhanced punishment is Sec. 3, Chap. 149, R. S., 1954, and reads as follows:

> "When a person is convicted of a crime punishable by imprisonment in the state prison, and it is alleged in the indictment and proved or admitted on trial, that he had been before convicted and sentenced to any state prison by any court of this state, or of any other state, or of the United States, whether pardoned therefor or not, he may be punished by imprisonment in the state prison for any term of years."

The second count of the indictment is based on Sec. 3. It has nothing to do nor is it concerned with the crime charged in the indictment excepting that if the jury finds as a fact

that the State has proven the allegations under this prior conviction count the court may punish the respondent by sentence of any number of years in the State Prison, providing, of course, he is convicted of the offense charged in the indictment. The jury made a special finding under this count that the respondent had been previously convicted. The respondent argues that the jury erred in its finding because there was insufficient evidence presented to it upon which it could base its finding. The State had the burden of proving beyond a reasonable doubt that Robert H. Mottram was on the seventeenth day of June, 1952 in the Superior Court, within and for the County of Androscoggin, convicted of the crime of grand larceny and sentenced to the Maine State Prison for not less than one nor more than two years. Contention is that the State has failed to prove that Robert H. Mottram was the same Robert H. Mottram who was convicted in June of 1952. In other words, the question of the sufficiency of proof of identity is brought in issue.

There are two distinct lines of authority regarding the effect to be given to identity of persons in proving allegations of prior conviction. One is that identity of name of respondent and the person previously convicted is prima facie evidence of identity and in the absence of rebutting testimony supports a finding of identity of person. The other line of cases holds that identity of name is insufficient. There must not only be proof of identity of name but of person. The jurisdiction of Maine has accepted, with approval, the latter authority. *State* v. *Beaudoin*, 131 Me. 31 at page 34:

> "In State v. Livermore, 59 Mont., 362, 196 Pac., 977, it was held that there must be proof of a former conviction on a charge of second or subsequent offense and the proof must be beyond a reasonable doubt. To the same effect are People v. Price, 6 N. Y. Crim. Rep. 141, 2 N. Y. Supp., 414;

State v. Barnhardt, 194 N. C., 622.; 40 S. E., 435; Byler v. State (1927 Ohio App.), 157 N. E., 421; Thurpin v. Com., 147 Va., 709, 137 S. E., 528.

"It is not sufficient to merely introduce the record of the conviction of a person bearing the same name as defendant. The identity of the person named in the record and the prisoner must be shown."

In considering proof of prior conviction, our court in *State v. Lashus*, 79 Me. 504, on page 506, said:

"It may be true that so far as the sufficiency and legal effect of the record are involved, a question of law only is presented. But the identity of the defendant on trial, with the person named in the record, is a question of fact. The identity of name is some evidence of identity of person, more or less potent, according to the connecting circumstances, but it is not, certainly in this case, sufficiently conclusive to authorize the court to take it from the jury and treat it as a question of law."

**24 C. J. S., Criminal Law, Sec. 1968, on page 1165:**

"The identity of accused as the person formerly convicted must be established beyond a reasonable doubt. While the identity of name is some evidence of the identity of a person, and may in some cases be sufficient to establish such identity, according to the weight of authority, where the state desires to impose a more severe penalty on account of accused having been convicted previously, identity of name is not sufficient to establish the identity of accused with that of the one previously convicted; it must be supplemented by other proof."

Reference is made to 58 A. L. R., page 20; 82 A. L. R., page 372, and 85 A. L. R., page 1104.

The State on the issue of prior conviction presented testimony based on an official record of the Superior Court that

one Robert H. Mottram had been previously sentenced and committed to the Maine State Prison for the crime of grand larceny. It further offered the testimony of a chief deputy of the County of Androscoggin who said he knew Robert H. Mottram; that he was in the courtroom when Mr. Mottram was sentenced and that the Robert H. Mottram concerned in these proceedings was the same person as was previously convicted in Androscoggin County as alleged in the second count of the indictment. This was in substance the evidence on which the jury could and did find that the respondent had been previously convicted. The special finding of prior conviction was justified by the evidence. The presiding justice was exceedingly careful and painstaking in charging the jury as to the law in reference to the count charging prior conviction, thereby giving to the respondent full and complete recognition of his legal rights.

*Exceptions overruled.*

*Appeal dismissed.*

*Motion for new trial denied.*

*Judgment for the State.*